***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Garner, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured employer.
3. An employee-employer relationship existed between the parties at all relevant times. The plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from July 6, 1965, to the present.
4. Plaintiff was last injuriously exposed to asbestos during plaintiffs employment with defendant, and specifically, that the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Subsequent to the initial hearing, defendant stipulated that the plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on December 10, 1997, by Dr. Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that those medical records would be stipulated into evidence for consideration by the Industrial Commission.
6. It is stipulated that defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. It is stipulated that plaintiff has worked at Weyerhaeuser since 1965 as an electrical mechanic/electrician. He has worked in every department in the plant except for the digester area. He typically would work a shift with a millwright and they would assist each other with their job duties. Plaintiff regularly assisted the millwrights in repairing asbestos-containing brake shoes on the paper machines. He was heavily exposed to asbestos dust and inhaled it while replacing brake shoes on the winder drums during the 1960's. He also assisted pipe fitters in repairing the pipes and was present when the pipe fitters removed, the asbestos insulation from the pipes. There were air hoses used to blow-down the brake drums, which created large quantities of dust in the air. His duties also included repairing the instruments as well as the electrical work. He often had to repair tubing that was wrapped in asbestos insulation. In order to get to the tubing, he would have to remove the asbestos insulation. Afterward, he would sweep up this insulation as part of his job duties. Defendant did not provide a respirator to protect plaintiff from exposure to asbestos dust.
8. Plaintiff's income for the fifty-two (52) weeks prior to his diagnosis of asbestosis was $62,183.30, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year, 1997, which is $512.00. By separate stipulation signed by counsel for both parties on August 13, 2002, it is stipulated that plaintiffs wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
9. Plaintiff contends that he is entitled to an award often percent (10%) penalty pursuant to the provisions of N. G. Gen. Stat. § 97-12, and the defendant stipulated that should the claim be found compensable, the defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
10. The parties agreed further that should plaintiff be awarded compensation, the Industrial Commission may include language removing the plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
11. The parties further agreed that should the Industrial Commission determine N.C. Gen. Stat. §§ 97-60 through 97-6 1.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
12. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Stat. §§ 97-60 through 97-6 1.7 apply to plaintiffs claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 B. What benefits, monetary and/or medical, is Plaintiff entitled to receive, if any?
13. The parties submitted for consideration by the Full Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Albert Curseen
c. Dr. James Johnson
d. Dr. Fred Dula
e. Dr. Ralph E. Whatley
f. Dr. Jay Segerra
g. Dr. Paul Venizelos
h. Dr. Richard Bernstein
i. Dr. L. C. Rao
j. Dr. John W. Wu
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1977 until present while working for defendant.
2. The following medical records confirming the diagnosis of asbestosis were submitted to the Industrial Commission by counsel for the parties:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University, dated December 10, 1997.
 B. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff has a clinical diagnosis of asbestos related pleural changes based on the HRCT of the chest and a history of significant exposure to asbestos with adequate latency to develop pleural changes.
 C. A CT scan and chest x-ray report dated August 11, 1997, interpreted by Dr. James C. Johnson of Piedmont Radiology in Salisbury, a radiologist and B-reader.
 D. A CT scan and chest x-ray report dated January 20, 1999, interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and Breader.
 E. Dr. Jay T. Segerra, a NIOSH B-reader board-certified in pulmonary diseases, reviewed the chest x-ray dated January 20, 1999. Overall, it is his impression, and the Full Commission finds as fact, that the interstitial changes are consistent with pulmonary asbestosis in a subject with an appropriate environmental exposure history and an adequate latency period.
 F. Dr. John W. Wu, a B-reader, reviewed the CT scan dated January 20, 1999. He also reports and the Full Commission finds that these findings are consistent with changes of asbestosis.
 G. Dr. Richard Bernstein, a B-reader at Pulmonary Critical Care Medicine, reviewed the chest x-ray dated January 20, 1999. He reported parenchymal abnormalities consistent with pneumoconiosis in the mid-and lower-lung zones with a profusion of 1/1.
 H. Dr. Paul Venizelos, a B-reader at Pulmonary Medicine Associates, reviewed the chest x-ray dated January 20, 1999. He reported parenchymal abnormalities consistent with pneumoconiosis in the lower-lung zones with a profusion of 1/0.
 I. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the chest x-ray dated January 20, 1999, and a chest x-ray dated June 21, 1999, from Pitt County Memorial Hospital. He reported and the Full Commission finds that all of these findings are consistent with the diagnosis of interstitial fibrosis due to asbestosis given a significant exposure history to asbestos dust.
 J. Dr. Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders saw plaintiff on January 20, 1999, for an evaluation. In his report, Dr. Curseen wrote and the Full Commission finds that plaintiff worked side by side with welders and insulators, exposing him to large amounts of dust on a daily basis.
 K. After a full physical evaluation and performance of pulmonary function tests, and subsequent review of the results of a chest x-ray and CT scan, Dr. Curseen reports and the Full Commission finds that the preponderance of medical evidence substantiates the diagnosis of asbestosis.
 L. A medical evaluation report authored by Dr. Ralph Whatley, who evaluated plaintiff at the request of the North Carolina Industrial Commission on August 30, 1999.
 M. After a full physical evaluation, pulmonary function testing, and review of medical records including chest x-ray and CT reports, it was the opinion of Dr. Whatley, and the Full Commission finds, that plaintiff has asbestosis based on occupational exposure and the abnormalities seen on CT scan, which Dr. Whatley feels is consistent with lung malignancy due to such exposure. Additionally, Dr. Whatley stated that plaintiff should have careful follow up by his physician with annual radiological evaluations.
3. The plaintiff does suffer from asbestosis and asbestos related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
4. The plaintiff's wages for 1997 were $62,183.30. The plaintiff's average weekly wage was sufficient to entitle him to a workers' compensation rate of $588.00, the rate of compensation at the time of plaintiffs removal by Order on April 30, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-6 1.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5 the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiffs wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000. Plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00, the rate of compensation at the time of plaintiffs removal by Order on April 30, 2000. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiffs asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiffs period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
9. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, and as a result of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on August 30, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, February 29, 2000, until paid in full. The interest shall be paid in full to the claimant and is subject to attorneys' fees. N.C. Gen. Stat. §97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiffs counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff and shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiffs eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 8th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER